UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

THE CITY OF NEW YORK,

                                                        Plaintiff,

                                                                                     03 CV. 3560 (DLI) (VVP)

                    -against-

GEODATA PLUS, LLC,

                                                          Defendant.

------------------------------------------------------------------------ x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

                                                            MICHAEL A. CARDOZO
                                                            Corporation Counsel of the
                                                               City of New York
                                                            *Attorney for Plaintiff the*
                                                               *City of New York*
                                                             100 Church Street  Rm 3-161
                                                             New York, New York 10007
                                                             (212) 788-0760

Of Counsel:

        Gerald E. Singleton
        Richard J. Costa

**Preliminary Statement**

GeoData's opposition to summary judgment is ineffective, relying on hearsay and inadmissible evidence, and failing to provide concrete and specific proof to raise any genuine triable issue of material fact. The opposing declarations submitted by GeoData do not address the specific facts and the striking similarities upon which the City's motion is based, which cannot be explained except by copying.

Most critically, there is no admissible evidence to support GeoData's affirmative defense of independent creation. In that regard, GeoData has submitted a vaguely worded declaration from a non-English speaking declarant, Andrew Komarov, who worked as the former manager of DeltaSoft Creative Group ("DeltaSoft"), a defunct company in the Republic of Kyrgyzstan, which allegedly was responsible for independently creating the GeoData product. The Komarov declaration, however, is very conclusory and it does not explain how Mr. Komarov's former staff members could have picked exactly the same control points that the City manually selected to depict curves tax lot lines, which is the most telling example of actual copying. Even defendant's own expert, Polina Golland, acknowledged in her deposition that it would be near impossible for the software program that DeltaSoft allegedly used to create the GeoData product to have automatically picked the same control points that were manually selected. (See Reply Declaration of Gerald E. Singleton, Exhibit A, Excerpt of Testimony of Polina Golland, at 78-80). Given that the possible variations are virtually limitless, GeoData's claim of independent creation is patently incredible.

Komarov's declaration says that he never heard of, had access to, or relied on the Bytes Files, labeled as such. But the undisputed evidence shows that GeoData had access to the Bytes Files in a different form, not labeled as such, namely, a promotional CD distributed by a competitor named COMPS that contained the Bytes Files, which defendant produced to the City

1

in this action. Tellingly, Mr. Komarov does not say that he did not have access to the COMPS disk and, more to the point, he does not specifically identify what DeltaSoft actually used or when it allegedly performed its work.

But most disturbing is the fact that, in a telephone conversation in October 2004, Mr. Komarov told Val Dekhman, a Russian speaking paralegal in the New York City Law Department, that he does not speak English, which begs the question of whether Mr. Komarov understood anything in the declaration that he signed, particularly since the verbiage used is highly technical and would be difficult to translate into Russian. (See accompanying Declaration of Val Dekhman, dated October 31, 2005). No certified Russian translation of the Komarov Declaration was signed by Mr. Komarov or provided to the Court on this motion.

Furthermore, Mr. Komarov told Mr. Dekhman that although he remembered that DeltaSoft did some work for someone in New York around 2000-2001, he had no recollection of doing any work for GeoData or its principal, George Vinsky, much less any recollection as to what kind of work might he have been performed. Plainly, his present declaration is completely inconsistent with his total lack of recollection one year ago.

GeoData has also submitted a declaration from Mr. Vinsky, which forms the basis for many statements regarding the defense of alleged independent creation by DeltaSoft. But Mr. Vinsky has no personal knowledge concerning what DeltaSoft did, and his declaration is rife with hearsay in regard to the statements forming the basis of the claim of independent creation. (See Declaration of George Vinsky, dated October 11, 2005, at paras. 24-30). Mr. Vinsky testified in his deposition that he does not speak Russian; that he never met or spoke directly to Mr. Komarov; and that all communications with his company, DeltaSoft, were via Internet chat.

2

(See Reply Declaration of Gerald E. Singleton, dated October 31, 2005, at Exhibit B, Excerpt of Testimony of George Vinsky, at 53-54).

Mr. Vinsky also claims that he could not have given the COMPS disk to DeltaSoft because COMPS did not get a license for the Bytes Files until December 13, 2000. At his deposition, however, Mr. Vinsky testified that the DeltaSoft work was performed in 2001, meaning that GeoData could have obtained to the Bytes Files access via the COMPS disk or another source. (Id.).

The opinions proffered by GeoData's expert, Polina Golland, do not serve to create triable issues of fact regarding the defense of alleged independent creation because she, too, has no personal knowledge concerning what DeltaSoft did or had access to. In her report, Ms. Golland merely speculates as to what DeltaSoft may have used, parroting statements made by Mr. Vinsky, and in that regard, her opinions concerning an ultimate fact have no probative value whatsoever. Like Mr. Komarov, Ms. Golland was not able to offer a credible explanation as to how GeoData could have used chosen exactly the same control points to depict curved lots lines without copying the Bytes Files.[1]

In sum, the opposing declarations submitted by GeoData are ineffective to raise a triable issue of fact. GeoData's response to the City's Rule 56.1 Statement shows that there are no disputed material facts, except as to copying, and as to that issue, no reasonable juror could return a verdict for GeoData based on the undisputed facts.

Finally, GeoData argues, as a matter of law, that the Bytes Files lack sufficient creativity and originality to be copyrightable. As shown below, however, the legal arguments

---

[1] The City reserves its right to move at a later date to preclude the testimony and expert opinion of Ms. Golland on Daubert grounds. Ms. Golland has no expertise in the area of GIS.

3

advanced by GeoData have been addressed and rejected by the Second Circuit. Accordingly, the City's motion for summary should be granted.

## ARGUMENT

### I

### THE BYTES FILES ARE ENTITLED TO COPYRIGHT PROTECTION

GeoData mischaracterizes the Supreme Court's holding in Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991), and the Second Circuit's subsequent holdings in Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 748 (2d Cir. 1998), and Sparaco v. Lawler, Matulsky, Skelly, Engineers LLP, 303 F.3d 460 (2d Cir. 2002), in order to reach the erroneous conclusion that the City's Bytes Files maps lack sufficient originality to be copyrightable. It is specious for GeoData to argue that the City's maps are not copyrightable, just as it would be to argue that a picture taken with a digital camera or a child's stick figure drawing are not copyrightable because of a lack of originality or creative spark.

As Feist instructs, "the originality requirement is not particularly stringent." 499 U.S. at 358. "Originality requires only that the author make the selection or arrangement independently (*i.e.,* without copying that selection or arrangement from another work), and that it display some minimum level of creativity." Id. The Bytes Files easily pass this test.

The undisputed facts show that the Bytes Files were independently created by the DCP and "possess[] sufficient creativity in both the selection, coordination, and arrangement of the facts that they depict, and . . . in the pictorial, graphic nature of the way that they do so." Streetwise, 159 F.3d at 748, quoting Mason v. Montgomery Data, Inc., 967 F.2d 135, 142 (5th Cir. 1992). As detailed in the supporting declaration of Michael Miller, the creation of the Bytes

Files involved the exercise of discretion and extensive non-mechanical decision-making in the selection and presentation of the data, which is more than sufficient to meet the minimum level of creativity necessary to satisfy the requirements of Feist.

GeoData's reading and analysis of Streetwise is simply wrong. In Streetwise, the Second Circuit did not hold that the plaintiff's maps were not copyrightable, as GeoData suggests, but rather that the one protectible element that plaintiff claimed had been copied, namely, the colors used to depict geographical facts, could not be viewed in isolation. In that respect, for purposes of assessing "substantial similarity," the court held that, "instead of examining the maps feature-by-feature, . . . we focus on the overall manner in which Streetwise selected, coordinated, and arranged the expressive elements in its map, including color, to depict the map's factual content." 159 F.3d at 748. Viewed in that light, the court observed that while both parties used the same color to depict water, many of the other features and colors used were entirely different, including proportional wider streets and the use of miniature replicas to depict major landmarks, such that the "total concept and overall feel created by the two works may not be said to be substantially similar." Id.

Here, in sharp contrast, the undisputed proof shows wholesale copying of the Bytes Files, such that all of the tax lot lines and many other features, are identical. A comparison of the works reveals numerous strikingly similarities. As shown in the expert analysis of Michael Miller, the differences noted by Defendant's expert, Polina Golland, are superficial and not indicative of independent creation.

In this case, the total concept and overall feel analysis cannot be used by GeoData to shield its wrongdoing. GeoData cannot avoid liability for copyright infringement by pointing to the bells and whistles it added to the City's work. See Tufenkian Import/Export Ventures, Inc.

5

v. Einstein Moomjy, Inc., 338 F.3d 127 (2d Cir. 2003) ("a would be appropriator who wishes to test the limits of copyright law gains nothing from 'adding on' to what she has precisely reproduced.").

GeoData also argues fallaciously that because one of the underlying sources for the Bytes Files are the official tax maps maintained by the Department of Finance ("DOF"), pursuant to the Administrative Code (see NYC Admin. Code § 11-202), and because those original paper tax maps were never copyrighted, it necessarily follows that the Bytes Files are in the public domain and not copyrightable, being akin to judicial opinions. (Opposing Mem. at 11-14). The Second Circuit, however, specifically addressed and rejected this argument in County of Suffolk v. First American Real Estate Solutions, 261 F.3d 179, 193-95 (2d Cir. 2001).

In First American, the court distinguished tax maps from judicial opinion and refused to adopt any general rule that works by governmental authors are automatically in the public domain from inception. 261 F.3d at 194. The court noted that many works of government, such as tax maps and GIS in particular, may require additional incentives in order to justify their creation that would warrant copyright protection.

In that case, Suffolk County's official tax maps were at issue, with the Court concluding that Suffolk County had stated a valid claim for copyright infringement and could present proof as the need for incentives to create such maps. Id. at 195. The court also held that the State's Freedom of Information Law ("FOIL") did not serve to abrogate Suffolk County's copyright in its tax maps and that it was possible for Suffolk County to comply with its FOIL obligations while maintaining its rights under the Copyright Act. Id. In that regard, the Court stated:

> There is nothing inconsistent between fulfilling FOIL's goal of
> access and permitting a state agency to place reasonable

6

> restrictions on the redistribution of its copyrighted works. For example, an agency's choice to notify the recipient that a portion of the record is protected by copyright law or an agency's requirement that the recipient enter into a licensing agreement if it wishes to distribute the record commercially does not restrict initial access but only what the recipient may do once it acquires access.

Id. at 191-92.

In this case, we are dealing with a GIS database that the City is <u>not</u> required to maintain. The undisputed facts show that economic incentives, namely, the ability to license, were necessary to justify the creation of the database, and have been sufficiently documented to warrant copyright protection.

GeoData also argues that the original tax maps maintained by the DOF were never copyrighted and that the Bytes Files, as a derivative thereof, are in the public domain. But the City did not waive its copyright to the official tax maps by merely making them available to the public without a fee. This Court, however, need not reach the issue of whether the official tax maps are in the public domain, since the Bytes Files are markedly different from the official tax maps in appearance and content, and constitute an entirely new map and GIS database.

Finally, GeoData argues that the merger doctrine bars an infringement claim because the idea and its expression are inseparable. (Opposing Mem. at 21). Again, however, this argument has been addressed and rejected. <u>See</u> <u>Mason v. Montgomery Data</u>, <u>supra</u>, 967 F.2d at 138-41. By GeoData's own admission, there are numerous variations of the City's maps and more than one way to present the data (See Opposing Mem., at 22) and, therefore, recognition of the City's copyright would not grant the City a monopoly except as to its unique compilation. GeoData was free to create its own map database, without copying the City's Bytes Files, but there is no simply credible evidence that it did.

II

**GEODATA'S OPPOSITION PAPERS FAIL
<u>TO RAISE A GENUINE ISSUE FOR TRIAL</u>**

Having shown that GeoData had access to the Bytes Files and that its product contains many striking similarities to the Bytes Files that cannot be explained in the absence of copying, the burden has shifted to GeoData to show that there is a genuine issue for trial. "When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>S & S Textiles International v. Steve Weave, Inc.</u>, No. 00 Civ. 8391, 2002 U. S. Dist. LEXIS 14742, at *9-10 (S.D.N.Y. Aug. 13, 2002) (citation omitted).

"The object of summary judgment is 'to discover whether one side has no real support for its version of the facts,' and thereby avoid unnecessary trials." <u>Perma Research and Dev. Co. v. The Singer Co.</u>, 41 F.2d 572, 578 (2d Cir. 1969). "At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" <u>Jeffreys v. City of New York</u>, Docket No. 03-257, 2005 U.S. App. LEXIS 22317 (2d Cir. Oct. 17, 2005), <u>quoting</u> <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998) (affirming grant of summary judgment where opposition was not credible).

The non-movant may not rely on hearsay. <u>Patterson v. City of Oneida</u>, 375 F.3d 206, 219 (2d Cir. 2004) ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial"); <u>Santos v. Murdock</u>, 243 F.3d 681, 683 (2d Cir. 2001); <u>Sarno v. Douglas Elliman-Gibbons & Ives, Inc.</u>, 183 F.3d 155, 160 (2d Cir. 1999) (holding that hearsay statement "did not constitute competent evidence" and thus could not be considered in opposition to motion for summary judgment); <u>H. Sand & Co. v.</u>

8

Airtemp. Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) (stating that "hearsay testimony that would not be admissible if testified to at the trial may not properly be set forth in [an] affidavit").

In this case, the opposing declarations submitted by GeoData are grounded largely on hearsay and/or are too vague to raise a triable issue of fact. George Vinsky has no personal knowledge regarding the alleged independent creation of the GeoData product by DeltaSoft and his declaration has no probative value on this critical issue. No reasonable juror could return a verdict for GeoData based on his testimony.

Likewise, the expert opinions of Polina Golland cannot be used as a substitute for proof of independent creation, because her opinions as to what DeltaSoft might have used as source materials is founded entirely on Mr. Vinsky hearsay statements and constitute nothing more than speculation and conjecture. To the extent she points out differences in the total concept and feel of the products, her opinion does not negate copying. She could not explain the most significant striking similarity, namely, the identity of control points for curved lines and conceded that it was highly unlikely that the software allegedly used by DeltaSoft could produce such results. No reasonable juror could return a verdict for GeoData based on her testimony.

That leaves Andrew Komarov as the one person allegedly having personal knowledge of independent creation, but his declaration is so suspect and vaguely worded as to be completely meaningless. It simply does not come to grips with the specific facts upon which the City's motion is based, and it offers no explanation regarding any of the substantial similarities noted by Michael Miller in his report. (see undated supporting Declaration of Michael Miller, Exhibit D).

"A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mount Vernon Fire Ins. Co. v.

Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002). "[I]ssues of credibility sufficient to defeat a motion for summary judgment are not created if the contradicting or impeaching evidence is too incredible to be believed by reasonable minds." Price v. Worldvision Enterprises, Inc., 455 F. Supp. 252, 266 n.25 (S.D.N.Y. 1978), aff'd without opinion, 603 F.2d 214 (2d Cir. 1979)

Given that Mr. Komarov does not speak English, common sense dictates that his declaration be in his native tongue, in this case Russian, accompanied by a certified translation that the opposing party could challenge with its own translation. The failure to follow such a procedure renders the declaration meaningless and inadmissible. Cf. Ediciones Quiroga, S.L. v. Fall River Music, Inc., No. 93 Civ. 3914 (RPP), 1998 U.S. Dist. LEXIS 19039, at *5 (S.D.N.Y. Dec. 7, 1998) ("Translations of foreign-language documents which are not certified as true and accurate translations and which do not even identify the translator are not properly authenticated and are not admissible as evidence).

## CONCLUSION

Based on the undisputed facts and the foregoing authorities, the City's motion for partial summary judgment should be granted.

Dated:     New York, New York
           October 31, 2005

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the
                                      City of New York
                                    *Attorney for Plaintiff the*
                                      *City of New York*
                                    100 Church Street  Rm 3-161
                                    New York, New York 10007
                                    (212) 788-0760

                                    By:  /s/ Gerald E. Singleton
                                         Gerald E. Singleton (GS4750)
                                         Senior Counsel, Intellectual Property